The Honorable Rodger Langster State Representative #39 Colonial Heights Heber Springs, AR 72543
Dear Representative Langster:
This is in response to your request for an opinion on several questions relating to two separate matters. The first set of questions involves a county election commission, while the second relates to compensation of a justice of the pace.
You note with respect to the initial matter that a lawsuit involving the distribution of voting machines was filed by the County Republican Committee against the County Election Commission, the County Democratic Committee, and the Commissioner of the County Election Commission (individually, as Commissioner, and as Chairman of the County Democratic Committee). The County Election Commission, at the time the controversy began, consisted of two members, one from each party. The third member had not been named by the State Board of Election Commissioners.
You make it clear that the questions posed have not been raised in the litigation. The concern apparently involves the County's payment of the county Attorney's fees in connection with the suit. You note that the bill submitted to and paid by the county represents the entire legal fee for the defendants. The questions posed in this regard have been restated and answered in the order presented.
1. Was the County Election Commission a legal entity with only two members, one from each party?
The answer to this question is "yes". A review of Arkansas Code Annotated 7-4-102 (Supp. 1987) indicates that the County Election Commission is composed of the county political party chairmen up to the point at which the third member is appointed. The statute merely requires that this appointment occur "at least forty (40) calendar days before any general election. . . ." Section 7-4-102
states in pertinent part as follows under subsection (b).
The county chairman of the county committee of the majority party and the county chairman of the county committee of the minority party shall be members of the county board of election commissioners together with one (1) additional or third member to be appointed by the State Board of Election Commissioners. The third member for each of the county boards of election commissioners shall be appointed by the State Board of Election Commissioners from a list of five (5) names submitted to the State Board of Election Commissioners by the county committee of the majority party. The third members for each of the county boards of election commissioners shall be elected by majority vote of the State Board of Election Commissioners from the list of five (5) nominees submitted. The list of five (5) nominees shall be certified and submitted to the State Board of Election Commissioners by the majority party county committee chairman subsequent to the primary election but at least fifty (50) calendar days before any general election for state, district, or county office. The third member of each county board of election commissioners shall be elected as aforesaid by the State Board of Election Commissioners at least forty (40) calendar days before any general election for state, district or county office.
It is therefore apparent that the county election commission, at the time of a primary, may not yet include the third member since that member's appointment (election) need only occur "at least forty (40)" days before the general election.
2. Should the county have paid all or any part of the county attorney's fees?
It must be initially noted in response to this question that the county attorney ". . . shall commence and prosecute or defend all civil actions in which his county is concerned." A.C.A.16-21-114(b). The lawsuit referenced in your correspondence appears to involve the election process and, specifically, matters concerning the county election commission. We cannot determine whether separate claims have been made, and defended by the county attorney, against the county party and/or its chairman, distinct from claims involving the county election commission. If, indeed, distinct and unrelated claims were made and so defended, a legitimate question may arise with respect to the county attorney's incurrence of expenses on behalf of private parties. However, that is a factual question, within the province of the judiciary, to be decided on a case by case basis. Although we can make no conclusive determinations in this regard, it seems that the claims arise from matters concerning the county election commission, and the county democratic committee chairman's involvement in those matters as a county board of election commissioner. It may reasonably be concluded that the county's payment of the county attorney's fee in that instance was appropriate, in accordance with A.C.A. 16-21-114.
3. If the county election commission was not duly established, was there a conflict of interest for the County Attorney to represent the county Democratic party in a suit with the county Republican committee and have his fee paid by the county?
As previously noted, the composition of the county election commission was in conformity with state law. A.C.A. 7-4-102
(Supp. 1987).
4. What is the remedy for restoring the money to the county if it was improper for the county to pay all or any part of the county attorney's fee, the penalty for not making restitution to the county and who is liable for making restitution?
A claim for restitution would have to be made against the county attorney based upon the improper incurrence of expenses on behalf of a private party. The claim would also involve the county, since the payment was apparently approved. However, while certain factual issues could possibly be raised, the county attorney's defense of the lawsuit seems appropriate in light of A.C.A.16-21-114, supra.
5. Since there were three separate defendants named in the suit, shouldn't the attorney's fee be divided three ways?
See response to questions two (2) and four (4). As previously noted, the existence of separate and distinct claims against each defendant involves a factual question which we cannot resolve.
6. Is there a legal obligation for the county attorney to defend a duly constituted county election commission?
The answer to this question is "yes". A county attorney in those counties which have established the office of civil attorney performs all civil duties of the prosecuting attorney. A.C.A.16-21-114(d). And it is clear under A.C.A. 7-4-106 that the prosecuting attorney advises and defends the county board of election commissioners.
Your second set of questions involves a justice of the peace's receipt of compensation for attending quorum court meetings. These questions are restated and answered as follows:
 Under the circumstances listed above, is it legal to pay JPs when they do not attend the regular meetings?
I have enclosed a copy of Attorney General Opinion Number 88-42, in response to this question. It was concluded therein that payment of the per diem compensation, notwithstanding a quorum court member's absence, would be contrary to law.
2. Whose obligation is it to make claims for per diem compensation to JPs for attending meetings?
Arkansas Code Annotated 14-14-1203 states in pertinent part as follows under subsections (a) and (b):
 (A) APPROPRIATION REQUIRED. All compensation, including salary, hourly compensation, expense allowances, and other remunerations, allowed to any county or township officer, or employee thereof, shall be made only on specific appropriation by the quorum court of the county.
 (b) PAYMENTS ON CLAIMS APPROVED BY THE COUNTY JUDGE. All compensation, including salary, hourly compensation, expense allowances, and other remuneration, allowed to any county or township officer, or employee thereof, shall be made only upon claim or voucher presented to the county judge and approved by him in the manner prescribed by law for disbursement of county funds.
It is thus clear that the county judge must approve all claims or vouchers. See also A.C.A. 14-14-1102(b)(2). And other pertinent statutory provisions indicate that these claims ordinarily are to be presented by the persons making the "demands" (A.C.A.14-23-101; 14-23-105), in this instance the justices of the peace. Section 14-14-1102(b)(2) must, however, also be considered with respect to specific procedures governing the conduct of county financial affairs. The county judge has the authority under subsection (c)(iii) thereof to promulgate rules and regulations in this regard. Any such rules and regulations should, therefore, also be consulted.
3. Who is to be held accountable for paying per diem compensation to JPs when they do not attend meetings nor themselves file a claim for the compensation?
It should be initially noted that certain penalties attach to the willful violation of provisions governing claims against counties. See A.C.A. 14-23-106. However, your question essentially involves a factual issue, within the province of the judiciary, to be resolved on a case by case basis.
4. If it is not appropriate to pay JPs under the circumstances mentioned above, what are the remedies for (a) correcting the procedure and (b) if money should be restored or returned to the county for payments erroneously or illegally paid, whose obligation is it to make restitution, keeping in mind, of course, in the situation mentioned above the absentee JPs did not personally file a claim for compensation? and (c) who is liable for making restitution?
Equitable remedies are accorded to taxpayers under Article 16, Section 13 of the Constitution of Arkansas. An illegal exaction action may therefore offer a remedy where the applicable law and relevant facts reveal a misapplication of county funds. While the outcome will ultimately depend upon the particular facts of each case, a claim of restitution may appropriately be made against the county official who benefited from the receipt of funds that were allegedly withdrawn unlawfully from the county treasury.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.